IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ACOUSTISEAL, INC., | ) | Case No. 02-44807 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| BRUCE E. STRAUSS, | ) | Adversary No. 04-5029 |
| Chapter 7 Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JANESVILLE PRODUCTS, | ) | |
| A Unit of Jason Incorporated, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

The Chapter 7 trustee filed this adversary proceeding to avoid alleged preferential transfers in the amount of $31,526.00 made by debtor Acoustiseal, Inc. (Acoustiseal) to Janesville Products (Janesville). Janesville filed a motion for summary judgment claiming either that the transfers were in the ordinary course of business or that it gave subsequent new value for the transfers. The trustee filed a cross motion for summary judgment. The trustee claims that the transfers were not in the ordinary course of Acoustiseal's business, and that the new value provided by Janesville was $2,592.00 less than the amount of the transfers. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of

Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I will grant Janesville's partial summary judgment motion, and I will deny, without prejudice, the trustee's motion for summary judgment. The amount remaining in dispute will be $2,592.00, and the only issue remaining will be whether the payment representing that amount was paid in the ordinary course of business.

## FACTUAL BACKGROUND

On September 4, 2002, Acoustiseal filed this Chapter 11 bankruptcy petition. On January 8, 2003, this Court converted the case to Chapter 7, and Bruce Strauss was appointed as the Chapter 7 trustee. On June 17, 2004, the trustee filed this adversary proceeding. The trustee alleges that commencing on June 7, 2002, Acoustiseal made seven transfers totaling $31,536.00 to Janesville. There is no dispute as to the number or amount of the transfers. The transfers were all in the form of checks with the dates and amounts as follows:

1. June 7, 2002:    Check Number 22861 in the amount of $3,024.00;

2. June 28, 2002:   Check Number 23186 in the amount of $5,616.00;

3. July 3, 2002:    Check Number 23309 in the amount of $6,048.00;

4. July 12, 2002:   Check Number 23564 in the amount of $3,456.00;

5. July 19, 2002:   Check Number 23564 in the amount of $3,456.00;

6. July 29, 2002:   Check Number 23777 in the amount of $6,912.00;

7. August 9, 2002:  Check Number 24030 in the amount of $3,024.00.

Janesville claims that the transfers were in the ordinary course of its business with

Acoustiseal. Alternatively, Janesville claims that Acoustiseal received new value in exchange for each transfer, thus, the transfers were not preferential. It is also undisputed that Janesville sent product, with a total value of $48,816.00, to Acoustiseal as follows:

1. June 14, 2002:     shipment in the amount of $10,368.00;

2. June 21, 2002:     shipment in the amount of  $4,320.00;

3. July 19, 2002:     shipment in the amount of  $3,456.00;

4. July 26, 2002:     shipment in the amount of  $4,752.00;

5. August 2, 2002:    shipment in the amount of  $2,160.00;

6. August 9, 2002:    shipment in the amount of  $5,184.00;

7. August 16, 2002:   shipment in the amount of  $4,320.00;

8. August 23, 2002:   shipment in the amount of  $6,048.00.

Janesville claims both that the transfers were in the ordinary course of business, and that it provided new value in exchange for the transfers. The trustee concedes Janesville gave new value in exchange for the transfers in the amount of $28,944.00. He argues, however, that the transfers were not in the ordinary course of business and that, after accounting for the new value given, Janesville still received preferential transfers in the amount of $2,592.00.

## DISCUSSION

Section 547(b) of the Bankruptcy Code (the Code) authorizes the trustee to avoid a transfer made on account of an antecedent debt within 90 days of a bankruptcy filing if, on the date the transfer was made, the debtor was insolvent or became insolvent as a result thereof and

3

the creditor received more than it would have received in a Chapter 7 liquidation.[1] The parties agree that the trustee has satisfied all elements of section 547(b) of the Code.

The Code, however, excepts certain transfers from the trustee's avoidance power. Janesville claims that either the "ordinary course of business defense" or the "subsequent new value defense" prevents the trustee from avoiding the transfers in question. The "ordinary course of business defense" provides as follows:

> (c)   [t]he trustee may not avoid under this section a transfer—
>
> . . .
>
> (2)   to the extent that such transfer was—
>
> (A)   in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee; and
>
> (B)   made in the ordinary course of business or financial affairs of the debtor and the transferee; and
>
> (C)   made according to ordinary business terms.[2]

It is undisputed that Janesville and Acoustiseal had a business relationship that began on January 9, 2001. As to the ordinary course defense, Janesville claims that, prior to June 7, 2002, Acoustiseal paid for goods received, on average, 63 days after shipment. The trustee claims that the average was 58 days. Nonetheless, Janesville admits that it sent merchandise to Acoustiseal and that each shipment was invoiced for payment within 30 days of receipt.

---

[1] 11 U.S.C. § 547(b).

[2] 11 U.S.C. § 547(c)(2).

Despite that requirement, the time of payment for goods received varied from 39 days to 91 days. Janesville, thus, claims that it was in the ordinary course of business for Acoustiseal to pay late, so payments outside that norm would still be in the ordinary course of business. In the Eighth Circuit a court must engage in a "peculiarly factual" analysis to determine if payments made within 90 days of a bankruptcy filing are made within the ordinary course of business.[3] The creditor must also demonstrate some consistency with other business transactions between the debtor and creditor in order to succeed with an ordinary course defense.[4] The issue is whether Janesville has submitted sufficient facts for this Court to make the determination on a motion for summary judgment.

Rule 7056 of the Federal Rules of Bankruptcy Procedure provides that Rule 56 of the Federal Rules of Civil Procedure applies when one or both parties move for summary judgment in an adversary proceeding in this Court. Rule 56 states that the "judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[5]

I find that there is a genuine issue of material fact as to the ordinary course of business

---

[3] *Lovett v. St. Johnsbury Trucking (In re St. Johnsbury Trucking)*, 931 F.2d 494, 497 (8th Cir. 1991)).

[4] *Central Hardware Co. v. Sherwin-Williams Co. (In re Spirit Holding Co., Inc.)*, 153 F.3d 902, 904 (8th Cir. 1998) (citing *Lovett v. St. Johnsbury Trucking (In re St. Johnsbury Trucking)*, 931 F.2d 494, 497 (8th Cir. 1991)).

[5] *Celotex v. Catrett*, 477 U.S. 317, 322-26 (1986); *Tudor Oaks Limited Partnership v. Cochrane*, 124 F.3d 978, 981 (8th Cir. 1997), *cert. denied*, 522 U.S. 1112.

between these two parties, and the peculiarly factual analysis necessary to decide this issue cannot be determined on a motion for summary judgment.

The Code also excepts from avoidance payments made in exchange for additional product:

> (c) [t]he trustee may not avoid under this section a transfer—
>
> . . .
>
> (4) to or for the benefit of a creditor, to the extent that, <u>after such transfer</u>, such creditor gave new value to or for the benefit of the debtor—
>
> (A) not secured by an otherwise unavoidable security interest; and
>
> (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.[6]

This is known as the "new value rule." The purpose of the "new value rule" is to encourage creditors to deal with troubled businesses and perhaps prevent a bankruptcy filing.[7] Moreover, by providing product to the troubled debtor following a payment, the estate is not diminished.[8]

---

[6] 11 U.S.C. § 547(c)(1), (2), and (4) (emphasis added).

[7] *Kroh Bros. Development Co. v. Continental Construction Engineers, Inc. (In re Kroh Bros. Development Co.)*, 930 F.2d 648, 651 (8th Cir. 1991). *See also Southern Technical College, Inc. v. Hood*, 89 F.3d 1381, 1384 (8th Cir. 1996) (Stating that the purpose of section 547(c)(4) is to encourage creditors to deal with troubled businesses, and that a subsequent advance of new value is excepted because a creditor who extends new value in exchange for payment cannot later be deemed to have depleted the bankruptcy estate to the detriment of other creditors).

[8] *Id.* at 652. *See also*, *Williams v. Agama Systems (In re Micro Innovations Corp.)*, 185 F.3d 329, 332 (5th Cir. 1999).

There is no question that Janesville provided new value to Acoustiseal during the preference period. The only dispute arises from the manner of calculating the new value. There are two approaches. The majority rule allows a given extension of new value to be applied against any preceding preference. For example, if Acoustiseal made a payment to Janesville in the amount of $1000.00 for no new value, then made another payment for $1000.00 and Janesville then provided Acoustiseal with $3000.00 worth of product, the trustee could not avoid either of the preferential payments. The subsequent new value would absorb both payments. This is known as the Garland Rule.[9] The minority rule allows a given extension of new value to be applied only to the immediately preceding preference. To use the example above, if Acoustiseal made a payment to Janesville in the amount of $1000.00, then made another payment in the amount of $1000.00 and then received product with a value of $2000.00 after that transfer, the trustee could still avoid the first transfer.[10] This is known as the "Leathers Rule." The circuit courts that have specifically addressed this issue have adopted the majority rule.[11] The Eighth Circuit instructs that the "relevant inquiry" under section 547(c)(4) is whether the new value replenishes the estate.[12] If so, there is no detriment to other creditors. Given that instruction,

---

[9] *In re Micro Innovations Corp.,* 185 F.3d at 336 (*citing In re Thomas Garland, Inc.*, 19 B.R. 920 (Bankr. E.D. Mo. 1982)).

[10] *Id.* at 337 (*citing Leathers v. Prime Leather Finishes Co.*, 40 B.R. 248 (D. Maine 1984)).

[11] *See In re Micro Innovations Corp.*, 185 F.3d at 337; *Mosier v. Ever-Fresh Food Co. (In re IRFM, Inc.)*, 52 F.3d 228, 232 (9th Cir. 1995); *Crichton v. Wheeling Nat'l Bank, (In re Meredith Manor, Inc.)*, 902 F.2d 257, 259 (4th Cir. 1990).

[12] *Kroh Bros. Development Co. v. Continental Construction Engineers, Inc. (In re Kroh Bros. Development Co.)*, 930 F.2d 648, 652 (8th Cir. 1991).

I find that the "Garland Rule" best construes the plain language of section 547(c)(4). I will, thus, apply the Garland Rule to the transfers at issue here. I begin with the first preferential transfer. On June 7, 2002, Acoustiseal transferred the sum of $3,024.00 to Janesville. Following that transfer, Janesville provided product to Acoustiseal on June 14, 2002, in the amount of $10,368.00 and on June 21, 2002, in the amount of $4,320.00. Clearly, the estate was replenished by product with a value greater than the transfer, so the transfer was not preferential. On June 28, 2002, Acoustiseal transferred the sum of $5,616.00 to Janesville. On July 19. 2002, Janesville provided product with a value of $3,456.00, leaving a preferential transfer of $2,160.00. On July 3, 2002, Acoustiseal made a payment to Janesville in the amount of $6,048.00. On July 26, 2002, Janesville provided product with a value of $4,752.00. Again, the transfer exceeded the amount of the subsequent value provided. The difference between the value of the product and the amount of the preferential payment ($1,296.00) is added to the earlier preferential transfer ($2,160.00) for a sum of $3,456.00. On July 12, 2002, Acoustiseal transferred the sum of $3,456.00 to Janesville. On August 2, 2002, Janesville sold product to Acoustiseal with a value of $2,160.00.  The transfer exceeded the value of the subsequent new value.The difference between the value of the product and the amount of the preferential payment is $1,296.00. This sum is added to the sum of $3,456.00 for a cumulative preferential transfer of $4,752.00. On July 19, 2002, Acoustiseal made a payment in the amount of $3,456.00. On August 9, Janesville sold product to Acoustiseal with a value of $5,184.00.  Since the value of the product provided was greater than the transfer that precipitated it by the sum of $1,728.00, the Garland Rule allows Janesville to apply that

difference to the preceding preferential transfers. Thus, the cumulative preferential transfer becomes $3,024.00. On July 29, 2002, Acoustiseal made a payment to Janesville in the amount of $6,912.00. On August 16, 2002, Janesville sold Accoustiseal product with a value of $4,320.00. The difference between the value of the product and the amount of the transfer is $2,592.00. That sum is added to the cumulative balance of $3,024.00 for a total of $5,616.00. On August 9, 2002, the final transfer from Acoustiseal to Janesville was in the amount of $3,024.00. In exchange, on August 23, 2002, Janesville sold product to Acoustiseal with a value of $6,048.00. The value exceeded the amount of payment by the sum of $3,024.00. Again, the Garland Rule allows Janesville to apply the sum of $3,024.00 to the preceding preferential transfers of $5,616.00 for a total of $2,592.00. To summarize another way, the Garland Rule permits creditors to set off value against preceding transfers, but not to set off transfers against prior value, as Janesville argues. The plain language of section 547(c)(4) provides relief to the extent that, *after such transfer*, the creditor gave new value to the debtor.[13] Here, Acoustiseal was replenished with new shipments for all payments it made during the preference period except for the sum of $2,592.00. Thus, save for the portion of the August 9, 2002, payment representing that amount, Janesville is entitled to assert the subsequent new value defense. The parties should prepare for trial on the remaining issue as to whether that payment was made in the ordinary course of business.

An Order in accordance with this Memorandum Opinion will be entered this date.

---

[13] 11 U.S.C. § 547(c)(4) (emphasis added).

                                                <u>/s/ Arthur B. Federman</u>
                                                       Bankruptcy Judge

Date: November 24, 2004

COURT TO SERVE PARTIES NOT RECEIVING ELECTRONIC NOTICE